Good morning. We have six cases on the calendar this morning. One from the Board of Contract Appeals, one from the Court of Federal Claims, two tracking cases, a trademark case from the TTAB and a government employee case illustrating the wide diversity in our caseload. The first case is from the Armed Forces, Board of Contract Appeals, Environmental Safety Consultants v. Secretary of the Navy, 2014-14-60. And we'll hear from Ms. Curran, sorry. May it please the Court, I am Diana Curran and I'm here on behalf of my small, disadvantaged business contract client, Environmental Safety Consultants, Inc., whom I refer to as ESCI for ease today. Before you is the issue of Invoice No. 7. This is a $138,000 invoice that was presented to the Navy upon completion of work back in 1997. Before the Court is whether this was a timely certification of this invoice in relation to a termination for convenience that occurred as a result of judicial action by the Armed Services Board of Contract Appeals that was not taken until September 2011. That body determined that a contract performed by ESCI was terminated for the convenience of the government rather than for reasons of default as declared by the Navy in June of 1998. So that's when you argue that your claim accrued, right? I think that is appropriately the earliest time, Your Honor, that the claim accrued when the termination occurred and that's because there were negotiations between the parties leading up to that actual termination and that my client did not understand that it was a disputed claim until that time because there were the ongoing negotiations between the two parties to arrive at a way to complete the contract. The client didn't understand that Invoice No. 7 was a disputed claim? Not until the termination was taken, Your Honor. Until which termination? The termination for default which was issued by the Navy in June of 1998. Okay, so if the claim accrues in June of 1998, your argument is that the claim is still timely? The claim was certified timely in that event, Your Honor, because the certification, first certification occurred in October of 2003, October 22nd, in fact. So it would have been within the six-year statute of limitations. If you take the government's position that it occurred at 14 days after submission upon nonpayment, my client misses it by a few months. But I thought your argument in your brief was that the claim didn't really accrue until the termination was converted. Your Honor, it's alternative arguments. Certainly, we would be delighted if the court determined that accrual means that the termination for the default, which was later reversed, was the first instance of an actual claim accruing. Alternatively... So if your claim accrues in 1998, then why isn't it true that you have a problem with grace judicata based on our dismissal of the earlier appeal for failure to prosecute after the lower court had found that the claim was untimely? Your Honor, we're arguing that the basis of the claim changed at the point of the court's determination in 2011. That determination was for convenience of the government. At that point, a new basis arose specifically under the contract at paragraph or section 1.42, which is a termination for convenience clause, which allows the contractor to submit... to the existence of invoice number 57. Doesn't that go back to December of 98? I'm not sure I understand the reference to another invoice, Your Honor. You're arguing a change in the status of the contract. Correct. Termination for default to termination for convenience? Yes. What does that have to do with your dispute over invoice 57? It's invoice number 7, Your Honor. Well, it has everything to do with it. The invoice number 7 was for completed work that had been performed and then was never paid. The government, at the point of declaring a determination for convenience, stated that it was now offset, that this amount would not be paid. In fact, there is another contract that this court has heard about that was also offset and determined in July of last year that my client was to be paid $98,000 in they have work that was performed and they have never paid for it under invoice number 7. We had a new basis arise for the justification of that payment upon the contract conversion to a termination for convenience because at that point, my client is allowed to submit a proposal for termination cost. But it's a different kind of claim, is it not? I mean, there's two different questions here. One is when your contract claim was approved and whether that's timely, and the other is whether you might have some other claims that arose after the termination for convenience in 2011, but they're different claims and you never made the cost reimbursement claim, did you? I really don't believe that that's the subject matter of this appeal, regrettably. After this appeal was taken, the lower court did go about and I believe is still continuing to work through a proposal for termination. But what's become what I think is somewhat a circular argument for the government is that they are arguing that because invoice number 7 was untimely, was uncertified, it will never be part of a claim that is compensated to my client. That's a different question, right? I don't know that it's really before the court at this junction. I mean, that's the point. What's before us is whether a contract claim that you just conceded to me, approved in 1998, is actionable at this point, given all the prior litigation, especially the prior litigation that found that exact claim to be untimely, and your failure and the fact that it was appealed and you didn't pursue that appeal. Why isn't that the end of that inquiry on the contract claim? Well, Your Honor, I believe that we need to look at the contract that provides a provision that allows my client to submit costs for that particular invoice number 7 at the point of the termination being altered in a fundamental way. Right. That's the very question that you just told me is not before us, right? Well, I believe that this court has, we had really no control over what might happen at the ASVCA after filing this. We felt that we had to take action immediately because of the invoice number 7 being essentially not looked at by the ASVCA. What we're requesting the court do is to direct the ASVCA to include invoice number 7 in its analysis, or alternatively, we would be delighted to actually find that we could be paid on that invoice for completed work that was accepted and performed and has never been paid. It is an invoice that has been outstanding since 1997. This case is utterly unique in terms of my experience with it, Your Honor, and I hope yours as well, in the amount of time that it took to get to the securities route that I am now before you to argue on behalf of this client. He's an 8A contractor. That seems like you're premature on your 2011 claim and on our ability to exercise any jurisdiction over that claim. I hope that this is not premature, Your Honor. I mean, we have been through almost 17 years of litigation since this initial action occurred in 1998. But the way you stated that suggests that other tribunals have been derelict in doing their duty. This was not properly certified to begin with, right? It was not properly certified until... This was not a claim. It was certified. It was a request for a routine payment, right? It was until it was... It wasn't done right. The argument was not that the work was not done right, that it would be set off against the government's claims of liquidated damages. Well, the claim wasn't done right. It wasn't that the work not being done right is a different issue. Your Honor, it was not certified until October 22nd, 2003. And then you didn't prosecute your appeal. I mean, you're trying to get us to be sympathetic to your cause of action, but there's two different places in which you had appeals that were dismissed for federal proxy. And of course, I was not counsel of record, Your Honor. I am a small solo practitioner myself, and this particular case speaks to my sense of justice and fairness as a former government counsel. But there are rules. Certainly, Your Honor. There are rules. Besides white hats and black hats, who's a good guy and who's a bad guy? And there's equity. There's equity. And there is equity in an invoice that has never been paid and will apparently never be paid unless this Court acts to assist. Was the invoice ever falsely certified? That was certainly one of the allegations. And Your Honor, I'd like you to consider there perhaps was some intimidation on the part of my client in that he was being told he had falsely certified the invoice. I think there was some confusion regarding precisely what type of certification was required. The contract contained a certification requirement, which my client met upon submission regarding certification of payment of subcontractors. The certification requirements, of course, for the CDA are somewhat magic language, which must be done and signed in a certain way for a cost over $100,000. He was absolutely as admitted by the government in page 3 of their brief. He was a solo. I'm sorry. He was an 8A contractor. He was unable to acquire consistent counsel in this matter. And he was eventually bankrupted. I'm going to suggest he may have been over his head to begin with. He had trouble performing. He was given various extensions on performance. He subcontracted out the work, didn't pay the subcontractor. The government had to pay the subcontractor. And you want us to find equities. Well, the government didn't pay the subcontractors. The subcontractors were paid by the bond. And if you did not pay an invoice of mine for $138,000, I too might be in a situation where I couldn't pay my subs or employees. By nonpayment, my client immediately had issues in meeting its payroll. As a small 8A contractor, that is one of the things we'd like to bring to the attention of the by the government to not put that particular kind of client in a situation where they cannot perform. And without payment for completed and accepted work, my client was in short order in front of bankruptcy. You didn't file a claim saying that the government breached its contract by making it impossible for your client to perform. No, Your Honor. We have not alleged impossibility. We are, what I am trying to make sure that the court understands is that I think in the 8A context, there is a higher fiduciary duty, and I've argued that in my reply brief, that the consistent requirement of the government to act in good faith and the great allowance of contracting officer discretion that is given in the termination for convenience clause permits them to entertain and pay costs for work that is actually done and that they've Invoice number 7 is not part of that claim as a result of the government's determination at the level of the ASPCA, the judge's determination that that claim is not before him because of the improper certification. Ms. Curran, if you wanted to save five minutes. Yes, Your Honor. It's gone. You can continue or save it. I'd like to save my five minutes to close, if that's allowable. Well, at this point, you have three minutes. We'll save that for you. Thank you, Your Honor. I appreciate that. Ms. Whitworth. May it please the Court. We would concede that the conversion of the termination for default to a termination for convenience allows a contractor to submit a termination for convenience claim. That is not the claim that's at issue here. When the conversion occurred, ESCI did, in fact, submit a settlement proposal that then ripened into a claim, and that was appealed before the Board. That claim is currently pending before the Board. Do you concede that they can at least attempt to seek cost reimbursement for activities that would have been reflected in Invoice number 7? Yes, Your Honor. They've actually included a request for payment for work performed under settlement claim. Okay. So, as I understand your argument, you're simply saying that Invoice number 7, which is a contract-based invoice, is not an invoice claim that can be made in a termination for convenience context. That's correct, Your Honor. The claim that's at issue here was submitted pursuant to the Payments Clause. Essentially, a routine invoice is submitted. Under the Payments Clause, the government rejected that invoice and withheld payment. That occurred back in 1997. The government rejected the invoice in June of 1997, and under the Payments Clause of the contract, that payment became due 14 days later in July of 1997. Now, whether the cost incurred in performing the work that's captured in Invoice number 7, whether that could be paid as part of a termination claim, that's currently pending before the Board. To the extent that might be paid, whether it's paid on a contract price basis or on a cost basis, that's not before the Court at this time. Does our recent decision in Sikorsky impact your race judicata argument? We had made the argument in the brief that... No, Your Honor, I don't think it does. We made the argument in the brief that the failure to submit a timely claim deprives this Court of jurisdiction. Obviously, in Sikorsky, the Court clarified that and said that it's not a jurisdictional issue. Here, the Board dismissed on jurisdictional grounds. However, we believe that the Court can affirm that judgment, despite the fact that it was dismissed essentially on a 12B1 basis. Does that make any difference for your race judicata argument, given that there was the opportunity to appeal the timeliness finding and the question presented in Sikorsky was never raised in that appeal? I think, again, in the Court's decision on the merits in 2011, the Court was reviewing a decision by the Court of Federal Claims in which it dismissed this particular claim. If I recall, it did so on the basis of jurisdiction. Again, we would argue that the Court is affirming a judgment, not necessarily the basis for that judgment. We don't think that would affect the res judicata argument here. But again, res judicata is only one basis upon which this Court could affirm the Board's decision in this case. We also raise issues of collateral stoppel, the fact that both the Board and the Court of Federal Claims have reached factual findings in this case, the first being that ESCI's claim for payment of invoice number 7 accrued in 1997, and that it did not file a claim, or the first time it filed a claim was in October of 2003, and thus its claim was untimely. ESCI should not be permitted to continually re-litigate when its claim accrued or to argue new legal basis for that claim, but it's barred by collateral stoppel from raising those arguments. I think the record is clear, even if this Court were to reach the merits here, the record is clear that the claim accrued when payment was withheld, which occurred in 1997, and ESCI did not file a certified claim, despite being instructed to by the Board until October of 2003. If there are no further questions, we would ask that this Court affirm the decision of the Board. Thank you. Thank you, Ms. Whitlow. Ms. Carman has three minutes for rebuttal. Thank you, Your Honor. In close, I simply want to state that this Court has an opportunity to assure that ESCI does not go away empty-handed. They certainly, I believe, did what they needed to do to toll the equitable, the statute, in that they were consistently and doggedly working to reverse and were successful in reversing a complete termination for their fault and to a termination for convenience. It's going to be very hollow justice if my client cannot recover any funds for their work that they performed that was accepted, and at this point, the benefit has been with the government since 1997. My client is not here today because his contract has been, it's really essentially broken, this man, in spirit, not the case, but certainly financially. He does not even have the funds sufficient to travel here today and to appear before you. That saddens him greatly, especially when this Court issued a ruling in July of last summer indicating that he was due payment on another contract the government had offset for the same reason of a default termination, which has been reversed since 2011. I think it's ironic that the Navy's termination for default failed essentially due to the time that the Navy took to declare a termination for default while claiming time was of the essence. Similarly, ESCI has again been prejudiced because it took from 1998 when the termination for default claimed by the Navy was finally overturned in 2011. The amount of energy that my client has individually and unceasingly applied to get to that result is certainly the first tier of a tolling requirement that it be diligently pursued. And in terms of the second prong of that test, my client was obstructed because of the fact that he is an immigrant to this country, English is a second language, and while he values education greatly, in fact, he went to night school to try to become a lawyer in Atlanta. The complexities of government contracting are a brick in the wall that I think was an obstruction to him in sustaining this effort so that he was utterly successful. He missed the mark potentially from the Navy's perspective on when he would have needed to file by a few months. However, I do not believe my client understood intrinsically that his rights and that his issue of a dispute arose until he was actually terminated. And I ask the court to please consider the 8A situation of this contract award and my client's unique circumstances and the extremely unique period of time that it's taken to get to this point to appear before you. Thank you very much. Thank you, Ms. Collins. We'll take the case on revisement.